UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LIBERTY MUTUAL FIRE INSURANCE COMPANY                                    PLAINTIFF

V.                                                      Civil Action No. 1:17-cv-010-GHD-DAS

FOWLKES PLUMBING, LLC, QUALITY
HEAT & AIR, INC., and SULLIVAN ENTERPRISES, INC.                         DEFENDANTS

---

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

The Court has before it Defendants Fowlkes Plumbing, LLC, Sullivan Enterprises, Inc., and Quality Hath & Air, Inc.'s motion for summary judgment [Doc. No. 102]. Having considered the matter, the Court finds that the motion should be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2015, the nonparty Chickasaw County School District entered into a contractual agreement ("Agreement" or "the Agreement") with Defendant Sullivan Enterprises to perform window restoration work on the Houlka Attendance Center. *See* Affidavit of Dr. Betsy Collums [Doc. No. 107-1] at ¶ 7 & Document A101-2007, Agreement between Chickasaw County School District and Sullivan Enterprises, Inc. [Doc. No. 107-2, Exhibit A] (hereinafter "Agreement"). On July 30, 2015, while construction work was being done, a fire began that consumed the entire Houlka Attendance Center Building. Doc. No. 107-1 at ¶ 11.

As a result of this fire, Plaintiff Liberty Mutual, the school district's property insurer, paid the school district $4.3 million for the damages caused to the building. Affidavit of Jay Goldstein [Doc. No. 107-4] at ¶ 13. Liberty Mutual then brought this subrogation action against the Defendants, alleging their negligence had started the fire.

1

On July 26, 2017, the Magistrate Judge permitted the parties to conduct limited discovery on the Defendants' motion for summary judgment as to their defenses of waiver of subrogation. [Doc No. 67].[1] The parties have conducted that discovery, filed their motions and supporting briefs, and the matter is now ripe for review.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* Fed. R. Civ. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. "An issue of fact is material only if its resolution could affect the outcome of the action." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 Fed. App'x 308, 312 (5th Cir. 2016) (per curiam) (quoting *Manning v. Chevron*

---

[1] Liberty Mutual also sued Defendant American Zurich Insurance Company, Sullivan Enterprises' insurer. The Magistrate Judge's July 26, 2017, order also directed the parties to conduct discovery and file motions concerning American Zurich's declaratory judgment claim and Liberty Mutual's summary judgment motion related to concurrent insurance coverage. By agreement of the parties, American Zurich was dismissed from this case on December 19, 2017.

2

*Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002) (internal quotation marks omitted))).

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court " 'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.' " *Thomas v. Baldwin*, 595 Fed.Appx. 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Id.* at 380 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## III. ANALYSIS

Defendants contend that Liberty Mutual is barred from recovering damages against them because the Agreement between the school district and Sullivan Enterprises waived subrogation rights for damages caused by the fire. They argue that AIA Document A201-2007, General Conditions of the Construction Contract, which contains a waiver of subrogation provision, is incorporated by reference into the parties' Agreement. Liberty Mutual argues that Document A201-2007 is not a part of the Agreement. Further, it argues that even if Document A201-2007 is a part of the Agreement, it does not apply to all the damages for which it claims recovery.

3

### A. Is AIA Document A201-2007 a part of the Agreement between the School District and Sullivan Enterprises?

In opposing summary judgment, Liberty Mutual argues that the School Board was never aware of Document A201-2007, nor was it physically attached to the Agreement. Therefore, argues Liberty Mutual, the document cannot be a part of the Agreement because it was never approved by the School Board as required by Mississippi law, nor was it incorporated into the contract.

Defendants make two arguments in opposition to Liberty Mutual's stance: first, that the School Board possessed a duty to attach Document A201-2007 to the Agreement, and thus Liberty Mutual may not argue the lack of attachment prevents Document A201-2007 from being a part of the Agreement. Second, that Document A201-2007 was in any event incorporated by reference into the Agreement. The Court considers these arguments in turn.

Neither party disputes that the School Board and Defendant Sullivan Enterprises entered into the Agreement [Doc. No. 107-2, Exhibit A]. It stands to reason, then, that if Document A201-2007 is part of the Agreement, the school board approved Document A201-2007 when it approved the Agreement. And if the Document A201-2007 was not a part of the Agreement, it has no bearing on this case. Thus, the question the Court must first decide is whether Document A201-2007 was a part of the Agreement.

Contract interpretation under Mississippi law is a "three-tiered" process. *Gatlin v. Sanderson Farms, Inc.* 2007 So. 2d 220, 222 (Miss. 2007)(citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)). The court must first look to the "four corners of the contract and at the language the parties used in expressing their agreement." *Id.* "When an instrument's substance is determined to be clear or unambiguous, the parties' intent must be effectuated." *Id.* (internal quotations omitted). A court may apply the canons of contract construction, however,

4

where the intent of the parties is unclear from document itself. *Id.* If after doing so, the intent is still unclear, a court may then consider parol or extrinsic evidence. *Id.*

When determining whether a document is incorporated into a contract, the Mississippi Supreme Court has stated:

> For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. *A reference to another document must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties. A document is considered incorporated by reference where the incorporating document specifically provides that it is subject to the incorporated one.* However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to which reference is made must be described in such terms that its identity may be ascertained beyond reasonable doubt.

*Woodruff v. Thames*, 143 So. 3d 546, 554–55 (Miss. 2014)(quoting 17A C.J.S. *Contracts* § 402(2011))(emphasis added). Explicit reference to a document is the clearest indication that the document is intended to be incorporated into a contract. "Courts applying Mississippi law have found a contract incorporates terms from another agreement where the contract explicitly adopts the entire agreement or explicitly references particular terms in the agreement." *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 913 (5th Cir. 2013)(citing *Galey v. World Mktg. Alliance,*, 510 F.3d 329, 532; (5th Cir. 2007) and *Perry v. U.S.*, 146 F.2d 398, 400 (5th Cir.1945) ("[A] reference in subcontract to the provisions, plans and specifications of a general contract imports them into the subcontract where not inconsistent with its terms....")).

In the case *sub judice*, Liberty Mutual contends that there can be no incorporation by reference because the School Board was unaware of the contents of Document A201-2007. As evidence, it attaches affidavits from the school district's superintendent and business manager, who both state they were not aware of the contents of Document A201-2007. That evidence,

5

however, is extrinsic evidence that this Court may consider only if the Agreement itself is ambiguous as to whether Document A201-2007 is considered a part of the Agreement.

The Agreement, however, contains no such ambiguity. Indeed, the Agreement contains numerous explicit references to Document A201-2007. Most pointedly, the very first page of the Agreement states that "AIA Document A201-2007, General Conditions of the Contract for Construction, is adopted in this document by reference." The Agreement further specifies that it incorporates several "Conditions of the Contract" including "General, Supplementary and other Conditions." Agreement, Art. 1. Further, the Agreement goes on to specifically state, under Article 9 "Enumeration of Contract Documents," that "The General Conditions are AIA Document A201-2007, General Conditions of the Contract for Construction." Agreement, § 9.1.2.[2]

The Court finds that these references clearly and unambiguously refer to AIA Document A201-2007, General Conditions of the Contract for Construction, because they expressly identify that document, and no evidence identifies any other document that could be considered the referenced document. An objective reading of the Agreement thus evinces a clear intent of the parties to incorporate A201-2007 in to the Agreement, and the Court therefore holds that the provisions of that document, including the waiver of subrogation, are a part of the Agreement.

This finding, however, does not end the Court's inquiry. The Court must now determine the scope of the incorporated subrogation waiver.

---

[2] Other provisions of the Agreement likewise make reference to specific provisions of Document A201-2007. For example, Section 7.1 states that "The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-2007."

## B. What is the scope of the waiver of subrogation provision?

The parties agree that if Document A201-2007 is a part of the Agreement, then the waiver of subrogation provisions operate to bar some portion of Liberty Mutual's claims for damages. The parties disagree about the scope of the waiver, however.

The waiver of subrogation provision in Document A201-2007 states that:

> The Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Section 11.3 or any other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary.

AIA Document A201-2007 § 11.3.7 [Doc. No. 102-1, Exhibit 3].

Section 11.3.1 of Document A201-2007 in turn requires that:

> "Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance written on a builder's risk "all-risk or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising the total value for the entire Project at the site . . . . This insurance shall include interest of the Owner, the Contractor, Subcontractors and Subsubcontractors in the Project.

"Work" is defined as "[T]he construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the project." AIA Document A201-2007 § 1.1.3 In the case *sub judice*, that is the window restoration work.

Liberty Mutual argues that the waiver of subrogation provision applies only to damage to the "Work" property, and not to damage to the reset of the building. In support of its argument, Liberty Mutual cites to *Fidelity & Guaranty Ins. Co. v. Craig-Wilkinson, Inc.*, 948 F. Supp. 608

(S.D. Miss.), *aff'd*, 101 F.3d 699 (5th Cir. 1996). The dispute in *Fidelity & Guaranty* arose after the property owner had contracted for an addition to be added to his home. 948 F. Supp. at 609. A subcontractor started a fire that spread and consumed the rest of the owner's house. *Id.* The contract at issue, however, was AIA Document A107-1987 Limited Scope Contract, rather than the document at issue in this case, which is Document A201-2007. *Id.* at 614. However, the relevant sections of Document A107-1987 are identical to the sections at issue here. Specifically, Article 17.3 of the parties' contract in *Fidelity & Guaranty* provided that:

> Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all risk policy form and shall include interests of the Owner, the Contractor, the Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire....

*Id.* at 609-10. The parties agreed, however, that the contractor would provide property insurance on the work, and the owners would not extend their homeowners' policy to cover the addition until it was completed. *Id.* at 610. The Court notes that Article 17.3 is <u>identical</u> to section 11.3.1 of Document A201-2007.

Article 17.6, the waiver of subrogation provision of the agreement in *Fidelity & Guaranty*, stated that:

> The Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work....

*Id.* at 611. Article 17.6 is likewise <u>identical</u> to section 11.3.7 of Document A201-2007. Liberty Mutual argues that because the *Fidelity & Guaranty* district court found that this provision limited

the waiver of subrogation only to damage to the "Work" property and not to damage to non-Work property, that this Court should find likewise for the contract at issue here.

The Court finds, however, that *Fidelity & Guaranty* is not precisely on point. As the Fifth Circuit explained in affirming the district court, the waiver in Article 17.6 "applied only to policies (1) obtained pursuant to article 17 of the contract or (2) applicable to the Work." *Fidelity & Guaranty*, 101 F.3d at 699. The Fifth Circuit further held that the insurance policy at issue was not "obtained pursuant to Article 17.6" because it was a homeowner's policy obtained well in advance of the construction contact, and did not include any interests other than the owners, and it was not "applicable to the Work" because it covered only the existing residence – not the addition being built – and the insurer did not pay any proceeds for damage to the addition. *Id.*; 948 F. Supp. at 612. Thus, the Fifth Circuit ruled that the waiver in Article 17.6 did not apply to the policy at all, and the district court thus did not need to determine the scope of the provision. *Id.*.This Court, however, must determine the scope of the subject provision in order to adjudicate the parties' dispute.

Specifically, in the case *sub judice*, neither party argues that the subject insurance policy is not implicated by section 11.3.7. Indeed, Liberty Mutual concedes that it paid out proceeds for damage to the Work property. The questions presented here are different – first, whether the phrase "to the extent covered by property insurance obtained pursuant to this Section 11.3" means any insurance used to satisfy the owner's obligation under section 11.3.1; and second, whether "any other property insurance applicable to the Work" means any claims paid out on a policy that covered the Work or only claims for the Work itself.

The scope of the subrogation waiver provision in Document A201-2007 (and previous AIA documents containing the same provision) has been the subject of numerous lawsuits across the

country. The jurisdictions that have considered the issue divide into two approaches in determining the scope of the waiver. As summarized by the Texas Court of Appeals:

> A review of cases from other jurisdictions involving language identical to or substantially similar to the language in the AIA Agreement here reveals two approaches to the question of when an insurer's subrogation rights are barred: one approach makes a distinction between Work (as that word is defined in the contract) and non-Work property and limits the scope of the waiver to damages to the Work; and the second approach draws no distinction between Work and non-Work, but instead, limits the scope of the waiver to the proceeds of the insurance provided under the contract between the owner and contractor.

*Trinity Universal Ins. Co. v. Bill Cox Const.*, 75 S.W.3d 6 (Tex.Civ.App.2001). In other words, the first approach defines the scope of the provision by the type of property damage that was incurred. Damages to "Work" property are covered by the waiver, and damages for non-Work property are not.

The second approach defines the scope by the insurance source of the proceeds. Under this approach, if the proceeds were paid from to the policy provided by the owner pursuant to section 11.3.1, then they are covered by the waiver.

While a majority of courts follow the second (insurance source) approach, the Fifth Circuit, in affirming the district court in *Fidelity & Guaranty*, has indicated that this Court should follow the first (damage type) approach. *Fidelity & Guaranty*, 101 F.3d at 699 ("The facts considered by New York's Court of Appeals in *S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.*, 556 N.E.2d 1097 (N.Y. 1990) are essentially indistinguishable from those presented by the instant case; at best, any distinctions are without a difference . . . . we agree with the analysis of the majority opinion in *Brisk* and its applicability to the instant facts and circumstances.").

The facts of *Brisk* are similar to the present case. The owner of an apartment building contracted with a waterproofing contractor to do corrective work on the building exterior and

parking garage. *Brisk*, 556 N.E. 2d at 1098. A fire started by the contractor spread from the exterior of the building to interior hallways and apartments. *Id.* Like the contract in *Fidelity & Guaranty*, the contract between the owner and contractor in *Brisk* was AIA Document A107-1987, Limited Scope Contract, rather than Document A101-2007 and Document A201-2007, which are at issue in the present case.

As noted above, however, the waiver clause in Document A107-1987 is identical to the waiver clause in Document A201-2007. In determining the extent of the waiver, the Court of Appeals of New York held:

> The waiver clause (art. 17.6) bars the claim of the owner's subrogee to the extent that the damages sought are covered either by: (1) "insurance obtained pursuant to [art. 17]" or (2) "any other property insurance applicable to the *Work*" (emphasis added). The first alternative (insurance obtained pursuant to art. 17) refers to insurance which the owner has procured under article 17.3 in which it is obligated to provide insurance "upon the entire *Work at the site*" (emphasis added) and to include therein the interests of the contractor and subcontractors "in the *Work*" (emphasis added). The second speaks for itself. It refers only to other insurance "applicable to the *Work*" (emphasis added). It makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work pursuant to article 17.3 *or some other policy covering the owner's property in which the owner has also provided coverage for the Work. In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building—i.e., damages to the Work itself.*

*Id.*, 1099–100 (emphasis added).

The insurance policy at issue in the case *sub judice* is most appropriately compared to the second alternative described because there is no evidence it was purchased specifically to cover the Work, or that it includes any interests of the contractors and subcontractors. Applying the *Brisk* court's analysis to the identical language found in A201-2007, the Court therefore finds that the waiver of subrogation provision found in Document A201-2007 applies only to claims for damages

11

to the Work itself and not to non-work property. Liberty Mutual may, therefore, continue its claims against the Defendants for damages only as to the non-Work property.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Document A201-207 was incorporated by reference into the Agreement between Chickasaw County School District and Sullivan Enterprises, Inc. Thus, the Court further finds that the waiver of subrogation contained in section 11.3.7 is applicable to the insurance policy Liberty Mutual issued to the Chickasaw County School District. The Court finds, however, that the subject provision only waives subrogation rights for damages to property associated with the window restoration project that compromises the "Work." Accordingly, the Court finds that the waiver of subrogation provision bars Liberty Mutual's recovery against Defendants for damages only as to that property. The Defendants' Motion for Summary Judgment should, therefore, be granted in part and denied in part.

An order in accordance with this opinion shall issue this day.

THIS, the 12th day of February, 2018.

_____
SENIOR U.S. DISTRICT JUDGE