UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LIBERTY MUTUAL FIRE INSURANCE COMPANY                      PLAINTIFF

V.                                                Civil No. 1:17-cv-010-GHD-DAS

FOWLKES PLUMBING, LLC, QUALITY
HEAT & AIR, INC., and SULLIVAN ENTERPRISES, INC.           DEFENDANTS

**MEMORANDUM OPINION DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

Now before this Court is the Defendants' motion for reconsideration [116]. In their motion, Defendants ask this Court to reconsider its previous denial of Defendants' motion for summary judgment [114]. Having considered the matter, the Court finds the motion should be denied.

**Factual and Procedural Background**

In May 2015, nonparty Chickasaw County School District entered into a contractual agreement ("Agreement" or "the Agreement") with Defendant Sullivan Enterprises to perform window restoration work on the Houlka Attendance Center. *See* Affidavit of Dr. Betsy Collums [Doc. No. 107-1] at ¶ 7 & Document A101-2007, Agreement between Chickasaw County School District and Sullivan Enterprises, Inc. [Doc. No. 107-2, Exhibit A]. On July 30, 2015, while construction work was ongoing a fire began that consumed the entire Houlka Attendance Center Building. Doc. No. 107-1 at ¶ 11.

As a result of this fire, Plaintiff Liberty Mutual, the school district's property insurer, paid the school district $4.3 million for the damages caused to the building. Affidavit of Jay Goldstein [Doc. No. 107-4] at ¶ 13. Liberty Mutual then brought this subrogation action against the Defendants, alleging that their negligence started the fire and seeking to recover insurance proceeds it paid out to the School District.

1

In their original motion, Defendants argued that the Agreement between Sullivan Enterprises, the contractor, and the School District provided a waiver of subrogation for the claims at hand. This Court found that the waiver of subrogation provision only extended to damages of property considered to be "Work" property as defined by the Agreement. As a result, the Agreement did not prevent Liberty Mutual from seeking recovery for damages to non-Work property, and so this Court denied Defendants' motion with respect to Liberty Mutual's claims for those damages.

To reach that decision, this Court had to decide whether the scope of the provision was determined by the nature of property damaged—an approach often described as the "minority" approach and described by this Court as the "damage type" approach—or by which insurance policy paid for the damages, described as the "majority" or "insurance source" approach. *See Trinity Universal Ins. Co. v. Bill Cox Const.*, 75 S.W.3d 6, 11-12 (Tex. Civ. App. 2001). The Court found the "damage type" approach applicable and therefore found that the waiver of subrogation provision did not prevent Liberty Mutual from seeking to recover damages it paid for non-Work property. As a result, the Court granted Defendants' motion with respect to damages for Work property and denied the motion with respect to damages for non-Work property.

Defendants now ask this Court to reconsider that opinion and order and decide that the majority approach should apply and grant summary judgment in their favor in full.

**Analysis**

"While the Federal Rules of Civil Procedure do not provide for a motion for reconsideration, such a motion may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order." *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Because the motion before this Court was filed within 28 days of the Court's order, the Court will treat the motion as a Rule 59(e) motion to alter or amend

2

judgment. *See* FED. R. CIV. P. 59. A Rule 59 motion is the proper vehicle by which a party can "correct manifest errors of law or fact" or "present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A party should not attempt to use the Rule 59 motion for the purpose of "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479, (citing *Simon v. U.S.*, 81 F.2d 1154, 1159 (5th Cir. 1990)).

Defendants identify four issues they assert are manifest errors of law or fact:

1. The Court's opinion was manifestly in error in law and fact when it mistakenly quoted from an affirmance by the Fifth Circuit in *Craig-Wilkinson*, 101 F.3d 699, 1996 WL 661216 (5th Cir. 1996) and mistakenly found that the court should follow the "minority rule" on the scope of waiver issue.

2. The Court's opinion misapprehended Defendants' waiver of subrogation argument by not applying section 11.3.5 of the General Conditions of A201-2007.

3. The Court's opinion inaccurately concluded "the relevant sections of Document A107-1987 [contained in *Fidelity & Guaranty Ins. Co. v. Craig-Wilkinson, Inc.*, 948 Supp. 608 (S.D. Miss.) aff'd 101 F.3d 699 are identical to the sections [in General Conditions of Form A201-2007] at issue here."

4. The Court's opinion was manifestly in error by finding Liberty Mutual's Policy only waived damages to work "because there is no evidence [Liberty Mutual's Policy] was purchased specifically to cover the work, or that it includes any interests of the contractors and subcontractors."

The Court will address these issues in turn.

1. **Was the Court in error when it "mistakenly quoted from an affirmance by the Fifth Circuit in *Craig-Wilkinson* and mistakenly found that the Court should follow the 'minority rule' on the scope of waiver" issue?**

Defendants contend first that this Court was in error by following the Fifth Circuit's guidance in *Fidelity & Guaranty v. Craig-Wilkson, Inc.*, 101 F.3d 699. Defendants argue that because the opinion was unpublished, and therefore not precedent, this Court should not have

3

followed the Fifth Circuit's suggestion to use the minority (damage type) approach to interpret the waiver of subrogation provision.

Though not binding precedent, unpublished Fifth Circuit opinions are persuasive authority. *See e.g., El Paso Indep. Sch. Dist. V. Richard. R.*, 591 F.3d 417, 425 (5th Cir. 2009). To show this Court committed manifest error in following such authority, the Defendants must show that it contradicted some other authority binding on this Court.

There is no such authority, either from Mississippi[1] or the Fifth Circuit, holding that the majority (insurance source) approach should apply to the waiver of subrogation provision in this Agreement. Thus, this Court was not in error in choosing to follow an unpublished opinion which suggested the minority approach was correct because it was not contrary to any binding case law.

2. **Did the Court misapprehended Defendants' waiver of subrogation argument by not applying section 11.3.5 of the General Conditions of A201-2007?**

Defendants next argue that this Court was in error by failing to analyze section 11.3.5 of the General Conditions of A201-2007 to the issue at hand. Section 11.3.5 states that:

> If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of section 11.3.7 for damages caused by fire or other loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

AIA Document A201-2007 § 11.3.7 [102-1, Exhibit 3]. This section, Defendants argue, shows the intention of the parties to waive subrogation rights for both non-work and work property damage.

---

[1] Because this case is before the Court pursuant to its diversity jurisdiction, state substantive law applies. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996)

4

By its terms section 11.3.5 only applies to 1) insurance policies that were separate from the policy covering the project during the construction period; or 2) policies that cover the project after construction was completed. The insurance policy in the case *sub judice* covered the Work property during the construction period, and so section 11.3.5 does not apply to it. Further, section 11.3.5 waives subrogation "in accordance with the terms of section 11.3.7," and so only waives subrogation to the same extent section 11.3.7 does—for damages to Work property. Defendants' argument is ultimately that the Court was wrong in applying the minority rule. While many courts disagree on the scope of these provisions, there is no precedent requiring this Court to apply the majority rule.

For as much importance as Defendants' motion for reconsideration places on section 11.3.5, Defendants made very little note of it in their briefs on the summary judgment motion. Defendants argue this was because Liberty Mutual's responses to Defendants' discovery did not indicate it would argue the scope of the waiver did not extend to cover non-Work property damage. Thus, Defendants argue, Liberty Mutual should not have been allowed to make that argument in its response to Defendants' summary judgment motion under FED. R. CIV. P. 31(c).

The interrogatory in question asked Liberty Mutual to "Please state the factual basis for your opposing Fowlkes' defense of waiver of subrogation during this First Phase" and to then provide contact information for witnesses who had knowledge of those facts. Liberty Mutual's Discovery Responses [117-1]. Liberty Mutual's response indicated that it believed that no one on the Chickasaw County School Board had knowledge of the waiver of subrogation provision in the Agreement.

Rule 31(c) provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

5

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 31(c).

"Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003). The argument that the scope the waiver of subrogation did not cover damage to non-Work property was not a "factual basis" for Liberty Mutual's defense, so the Court need not exclude it because 1) it was outside the scope of Defendants' interrogatory and 2) it is not "information" or a "witness" used to supply evidence on a motion. There is no manifest error on this issue.

3. **Did the Court inaccurately conclude that "the relevant sections of Document A107-1987 [contained in *Fidelity & Guaranty Ins. Co. v. Craig-Wilkinson, Inc.*, 948 Supp. 608 (S.D. Miss.) aff'd 101 F.3d 699 (5th Cir. 1996)] are identical to the sections [in General Conditions of Form A201-2007] at issue here"?**

Defendants next argue that this Court committed error when it found that waiver of subrogation provision in Document A107-1987, the contract analyzed in the *Fidelity and Guaranty* opinions, was identical to the waiver of subrogation provision in the General Conditions of Form A201-2007 at issue in the case *sub judice*.

The waiver of subrogation provision in Document A107-1987 is as follows:

> The Owner and Contractor waive all rights against each other and the Architect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees, **for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work** . . .

*Fidelity and Guaranty*, 948 F. Supp. at 611; Def.'s Memo. in Supp. [117] at p. 14 fn. 2[2] (emphasis added). The waiver of subrogation provision in General Conditions of Form A201-2007 is:

> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, **for damages caused by fire or other cause of loss to the extent covered by property insurance obtained pursuant to this section 11.3 or other property insurance applicable to the Work,** except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

AIA Document A201-2007 § 11.3.7 [102-1, Exhibit 3] (emphasis added). The scope of each provision defines the waiver to extend the exact same way: to damages covered by 1) insurance that was obtained pursuant to the owner's requirements to purchase insurance under that respective section; or 2) other property insurance applicable to the Work. Thus, while not literally identical, the sections are so substantially similar that it is appropriate to analyze them in the same way.

---

[2] Defendants purported to attach a copy of Document A107-1987 as "Exhibit 2" of their motion. However, a review of that document shows that it is actually AIA Document A101-1987 not A107-1987. Defendants later attached a copy of Document A107-1987 to their reply [119-1]. Liberty Mutual moved to strike the exhibit [120]. Because the Court needs only to refer to the language of the document quoted in *Fidelity and Guaranty*, it need not consider the attachment, and so Liberty Mutual's motion to strike is moot.

4. **Did the Court incorrectly find that "Liberty Mutual's Policy only waived damages to work 'because there is no evidence [Liberty Mutual's Policy] was purchased specifically to cover the work, or that it includes any interests of the contractors and subcontractors' "?**

Defendants finally contend that this Court wrongfully decided that Liberty Mutual's policy only waived damages to Work property. Defendants argue that nothing in Liberty Mutual's insurance policy with the School District prohibited the School District from waiving subrogation rights for damage to Work property, and that the policy should be construed against Liberty Mutual to preclude recovery in this instance.

The question presented and the briefing by Defendants on this issue suggest that Defendants misunderstand the Court's holding. The Court did not find that "Liberty Mutual's Policy only waived damages to work." The Court found that the Agreement between the School District and Defendants only waived subrogation for damages to Work property. The scope of Liberty Mutual's insurance policy was not an issue in the summary judgment motion. That Liberty Mutual's policy placed no limits on what rights the insured *can* waive is irrelevant where the Court finds, as it did here, that the insured *did not* waive certain subrogation rights. There is no error.

## Conclusion

The Court finds that Defendants have not identified any manifest errors of law or fact that warrant the prior order of the Court to be amended. Accordingly, Defendants' motion for reconsideration is denied.

An order in accordance with this opinion shall issue.

This, the 3rd day of April, 2018.

SENIOR U.S. DISTRICT JUDGE

8